**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **RED DOOR SALONS, INC.,** | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No.: 1:06CV00286 |
| | : | Judge Gladys Kessler |
| **ERWIN GOMEZ, et al.,** | : | Deck Type: Contract |
| | : | |
| Defendants. | : | |

### DEFENDANT ERWIN GOMEZ'S MOTION TO DISMISS IN PART

Defendant Erwin Gomez ("Mr. Gomez"), by and through undersigned counsel, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, hereby moves for an order dismissing: Count I, Breach of Contract; Count III, Intentional Interference with Business Expectancies; Count VI, Breach of Fiduciary Duty; and Count VIII, Breach of Implied Covenant of Good Faith and Fair Dealing asserted against Mr. Gomez in the Complaint filed by plaintiff Red Door Salons, Inc. ("plaintiff") for failure to state a claim upon which relief can be granted.

As support for this Motion, Mr. Gomez respectfully refers this Court to the attached Memorandum of Points of Authorities in support thereof.

WHEREFORE, Mr. Gomez respectfully requests an Order dismissing any and all claims asserted in plaintiff's Complaint against Mr. Gomez.

Respectfully submitted,

TOBIN, O'CONNOR, EWING & RICHARD

By:   /s/David C. Tobin
David C. Tobin, Esq., D.C. Bar # 395959
Ziad P. Haddad, Esq., D.C. Bar #469470
5335 Wisconsin Ave., N.W., Suite 700
Washington, DC 20015
Tel:  (202) 362-5900
Fax:  (202) 362-5901
*Attorney for Defendant Erwin Gomez*

## CERTIFICATION OF COMPLIANCE WITH LCvR 7(m)

Counsel for defendant Erwin Gomez certifies that on March 8, 2006, he conferred with opposing counsel in an effort to determine whether there is opposition to the relief sought, and to narrow areas of disagreement. Counsel for plaintiff was unable to agree to the relief sought in this motion.

## REQUEST FOR ORAL HEARING

Pursuant to LCvR 7(f) and 78.1, counsel for defendant Erwin Gomez requests an oral hearing on this motion.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 8th day of March, 2006, a true and correct copy of the foregoing Defendant Erwin Gomez's Motion To Dismiss in Part and the Memorandum of Points and Authorities in Support thereof was served by first-class, postage pre-paid U.S. mail to:

Joel L. Greene, Esq.
Jennings, Strouss & Salmon, P.L.C.
1700 Pennsylvania Avenue, N.W., Suite 500
Washington, D.C.  20006

Stephanie J. Quincy, Esq.
Robert E. Youle, Esq.
Sherman & Howard, L.L.C.
1850 North Central Avenue, Suite 500
Phoenix, Arizona  85004

/s/David C. Tobin
David C. Tobin

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **RED DOOR SALONS, INC.,** | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No.: 1:06CV00286 |
| | : | Judge Gladys Kessler |
| **ERWIN GOMEZ, et al.,** | : | Deck Type: Contract |
| | : | |
| Defendants. | : | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT ERWIN GOMEZ'S MOTION TO DISMISS IN PART**

Defendant Erwin Gomez ("Mr. Gomez"), by and through undersigned counsel, hereby submits this memorandum of points and authorities in support of his motion to dismiss Count I, Breach of Contract; Count III, Intentional Interference with Business Expectancies; Count VI, Breach of Fiduciary Duty; and Count VIII, Breach of Implied Covenant of Good Faith and Fair Dealing asserted against Mr. Gomez in the Complaint filed by plaintiff Red Door Salons, Inc. ("plaintiff"), and states as follows:

**I.     INTRODUCTION**

This is hardly a case of an employee suddenly, unexpectedly and wrongfully competing with his former employer. As plaintiff's own complaint makes clear, in June 2005, defendant Erwin Gomez informed his employer at the Elizabeth Arden salon in Washington D.C. that he had leased space and intended to open his own competing salon business in the near future. Plaintiff never suggested that Mr. Gomez was not legally entitled to do so, nor did it attempt to stop him. To the contrary, the Complaint establishes that Mr. Gomez continued to work at Elizabeth Arden for several months, and that when Mr. Gomez opened his salon in Georgetown in or about October 2005, plaintiff was fully aware of this fact.

Nearly four months later, in mid-February, plaintiff filed its complaint alleging a host of claims against Mr. Gomez. Defendant will demonstrate below that a number of those claims are simply not actionable under the Federal Rules. Among other things, it is clear that plaintiff Red Door Salons, Inc. is not even a party to an employment agreement or any other agreement with Mr. Gomez, much less one that would permit plaintiff to enjoin his operations. Unfortunately, the limitations of Fed. R. Civ. P. 12(b)(6) force Mr. Gomez to await another day on which to address the merits of the remaining claims against him. For the time being, however, Mr. Gomez respectfully submits that Counts I, III, VI and VIII must be dismissed.

## II.     FACTS AS ALLEGED IN THE COMPLAINT

According to the Complaint, Mr. Gomez was first employed with the Elizabeth Arden salon as a makeup artist at its Chevy Chase location in 1994. Complaint at ¶ 15. Plaintiff also alleges that Mr. Gomez signed an employment agreement in 1998. Id. That agreement is attached as Exhibit A to the Complaint.

Again, according to the Complaint, Mr. Gomez informed his employer in the "fall/summer of 2005" of his intent to open a competing salon. Id. at ¶ 19. The Complaint alleges that thereafter Mr. Gomez signed an "agreement," attached as Exhibit B to the Complaint, containing a host of restrictions not contained in the employment agreement attached as Exhibit A. See Complaint at ¶¶ 19, 48. As described in the argument section below, it is quite apparent that Mr. Gomez did not sign Exhibit B.

It is notable, however, that, at least according to Exhibit B, the response to Mr. Gomez's announced intention to compete was quite positive:

> On June 21, you discussed with Chris Fields and me, your career plans to open your own spa/salon operation at some time in the near future. You have had a great career and long tenure with the Red Door Spas, and have grown and developed your talent. To that end, we would like to separate with you on

4

>amenable terms and work with you until that transition. You have been a valued and appreciated associate, and left a legacy with the company. You also indicated that presently, you have leased space for this salon business operation, and were waiting for closure on finances to fund this project.

See Complaint Exhibit B.

Mr. Gomez announced his resignation on September 8, 2005. Id. at ¶ 20. He then commenced operations of his new salon in October 2005. Id. at ¶¶ 19-20.[1] On February 16, 2006, plaintiff filed the instant complaint.

### III.   STANDARD FOR MOTION TO DISMISS

In considering a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the Court must construe the complaint "in the light most favorable to the plaintiff and must grant the plaintiff the benefit of all inferences that can be derived from the alleged facts." See Raymen v. United Senior Association, Inc., 409 F.Supp.2d 15 (D.D.C. 2006) (citing Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99 (1957) and Barr v. Clinton, 370 F.3d 1196 (D.C.Cir.2004)). Only where it appears "beyond doubt" that a plaintiff can prove no set of facts in support of his claim that would entitle him to relief may a complaint be dismissed under Rule 12(b)(6). Id. The Court "need not accept inferences or conclusory allegations that are unsupported by the facts set forth in the complaint." Raymen, 409 F.Supp at 20 (citing Kowal v. MCI Communications Corp., 16 F.3d 1196 (D.C.Cir.1994)). Neither must the Court consider conclusory legal allegations. Bowhead Information Technology Services, LLC v. Catapult Technology, Ltd., 377 F.Supp.2d 166 (D.D.C. 2005) (citing Domen v. Nat'l Rehabilitation Hosp., 925 F.Supp. 830 (D.D.C. 1996).

---

[1] Paragraph 20 of the complaint claims that Mr. Gomez "secretly" opened his salon in October 2005, and that doing so was contrary to his announced intention "to take some time off during his four month non-competition period." However, and contrary to these allegations, Exhibit B suggests that Mr. Gomez informed Elizabeth Arden as early as June 21, 2005 that he had already leased the space for his competing salon. And Exhibit A to the Complaint makes clear that the alleged "four month non-competition period" was limited to competition within three miles of the Chevy Chase location where Mr. Gomez worked. Exhibit A at ¶ 3(b). Plaintiff does not claim that Mr. Gomez's salon violates this geographical restriction.

5

IV.     ARGUMENT

    **A.   Count I for Breach of Contract must be dismissed because the Complaint establishes that there is no contract between plaintiff and defendant Erwin Gomez.**

The plaintiff in this case is "Red Door Salons, Inc." Count I of the Complaint is based on Mr. Gomez's alleged breach of the "agreements" attached as Exhibits A and B to the Complaint. Complaint at ¶ 48. A review of these documents, however, makes clear that neither is an agreement between plaintiff Red Door Salons, Inc. and defendant Erwin Gomez. Accordingly, Count I must be dismissed.

It is elementary in contracts law that in "order to form a binding agreement, both parties must have the distinct intention to be bound; without such intent, there can be no assent and therefore no contract." Greyhound Lines, Inc. v. Bender, 595 F.Supp. 1209, 1223 (D.D.C.1984) (quoting Edmund J. Flynn Co. v. LaVay, 431 A.2d 543, 547 (D.C.1981)). The individuals or entities making binding promises to one another are the "parties" to a contract.[2] See Restatement (Second) of Contracts (1981) (stating generally that those parties whose meeting of the minds results in assenting to a set of promises, the breach of which the law gives a remedy, are parties to a contract).

Plaintiff is plainly not a party to the employment agreement attached to the complaint as Exhibit A. That document is an employment agreement between "Elizabeth Arden Salons, Inc." and Erwin Gomez. Plaintiff nowhere alleges that "Red Door Salons, Inc." is the same legal entity as "Elizabeth Arden Salons, Inc." Exhibit A at 1. Indeed, plaintiff's disclosure statement filed pursuant to LCvR 7.1 states that plaintiff "Red Door Salons, Inc." is a wholly owned

---

[2] The forum state's choice of law rules apply in a diversity action. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020 (1941); Lee v. Flintkote Co., 593 F.2d 1275 (D.C. Cir. 1979). The District of Columbia uses the government interests test to determine which applicable law should be used if there is a conflict in potentially applicable legal standards. Wright v. Sony Pictures Entertainment, Inc., 394 F.Supp.2d 27 (D.D.C. 2005). Where contract questions are involved, and the contract in question is allegedly negotiated, signed and performed in the District of Columbia, the District of Columbia has a more substantial interest in resolving the issue. Id. Thus, the Court should apply District of Columbia law to the present action.

6

subsidiary of "Elizabeth Arden Spas, L.L.C." and that Elizabeth Arden Salons L.L.C. is a wholly owned subsidiary of "Elizabeth Arden Salon – Holdings, Inc." The signatory of Exhibit A, "Elizabeth Arden Salons, Inc." however, appears to be a stranger to both the Complaint and to plaintiff's ownership structure. Plaintiff is not a party to the very exhibit it attaches to its Complaint and thus lacks standing to enforce it. Accord, Bowhead Information Technology Services, LLC v. Catapult Technology, Ltd., 377 F.Supp. 2d 166, 171 (D.D.C. 2005) ("to sue under a contract to which it is not a party, a plaintiff 'must demonstrate that he is an intended third-party beneficiary, as evidenced by the intent or words of the . . . contract.'") (citing Sallee v. United States, 41 Fed.Cl. 509, 514 (1998)).

The distinction between these entities is not a mere semantic one. For example, plaintiff has invoked this Court's diversity jurisdiction. "Elizabeth Arden Salons, Inc." may or may not impact the allegation of diversity between plaintiff and defendants. Likewise, "Elizabeth Arden Salons, Inc." may or may not still exist, and it may or may not be authorized to pursue this action. What is clear, however, is that "Elizabeth Arden Salons, Inc." is not a party to this action. Plaintiff has not alleged facts permitting it to assert a breach of contract on behalf of the third-party signatory of Exhibit A.

Nor does Exhibit B to the Complaint – the so-called "Letter Agreement" – establish a contract between plaintiff and Mr. Gomez. First, although the Complaint alleges at ¶48 that Mr. Gomez signed the Letter Agreement, it is self-evident from Exhibit B that Erwin Gomez did not sign the document. The only signature on Exhibit B purports to be that of a "Sue Page." Mr. Gomez's signature does not appear anywhere on Exhibit B.

Furthermore, Exhibit B states that its terms are purportedly in addition to "the Employment Agreement signed by you [supposedly Gomez] on 7/8/05 and are held responsible

7

for those terms and agreement."  Nowhere in the Complaint or attached thereto, however, are the details of any agreement signed by Mr. Gomez on July 8, 2005.  To the contrary, the "employment agreement" plaintiff chose to attach to the Complaint is the previously described Exhibit A, which is dated January 21, 1998.  Thus, whatever Exhibit B is, it is certainly not part of the "employment agreement" – Exhibit A – that plaintiff seeks to enforce in Count I.

Further complicating matters, Exhibit B suggests that it purports to protect the interests of yet another entity that is not party to this action – "Red Door Spa Holdings, Inc."  Specifically, Exhibit B states that "The names and contact information of Red Door guests remain the sole property and possession of Red Door Spa Holdings, Inc." (emphasis supplied).  "Red Door Spa Holdings, Inc." is not a party in this case, nor is it part of the ownership structure of plaintiff Red Door Salons, Inc. as disclosed in plaintiff's LCvR 7.1 disclosure.  Again, any such rights of "Red Door Holdings, Inc." are not, at least on the complaint in this matter, enforceable by plaintiff Red Door Salons, Inc.

Finally, to the extent that plaintiff would like to impose any restrictions in Exhibit B against Erwin Gomez, such an effort is precluded by the terms of Exhibit A.  Specifically, Exhibit A contains an integration clause at p. 3, stating that "This agreement contains the entire agreement of the parties.  It may not be changed orally, but only by an agreement in writing signed by the party against whom enforcement of any waiver, change, modification or discharge is sought.  (emphasis supplied).  Because Mr. Gomez never signed Exhibit B, and plaintiff nowhere alleges that the parties agreed to waive or otherwise invalidate the integration clause, plaintiff has failed to state a claim that Exhibit B is enforceable against Mr. Gomez.  Cf. Ghahremani v. Uptown Partners LLC, 2005 WL 3211463 at *13 (D.D.C.) (noting that some

District of Columbia cases have held that integration clauses bar subsequent oral modification, while others have not).

> **B.    Plaintiff fails to state a claim for intentional interference with business expectancy (Count III).**

In the District of Columbia, a claim of intentional interference with business expectancy consists of four elements: 1) the existence of a valid business relationship or expectancy; (2) knowledge of the relationship or expectancy on the part of the interferer; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage. PM Services Co. v. Odoi Associates, Inc., 2006 WL 20382 at *34 (D.D.C. 2006), citing Bennett Enter., Inc. v. Domino's Pizza, Inc., 45 F.3d 493, 499 (D.C.Cir. 1995). In order to survive a motion to dismiss, a plaintiff must allege business expectancies, "not grounded in present contractual relationships, but which are commercially reasonable to expect." Sheppard v. Dickstein, Shapiro, Morin & Oshinksky, 59 F.Supp.2d 27, 34 (D.D.C. 1999). Furthermore, the defendant's interference must be improper. "Competitive activity by itself will not be deemed tortious interference with business relations unless accomplished by wrongful or improper means, such as fraud, violence or civil suits." Bowhead, 377 F.Supp.2d at 174, quoting Mercer Mgmt. Consulting v. Wilde, 920 F.Supp. 219, 239 (D.D.C. 1996).

Plaintiff's allegations, found in Count III of the Complaint, fail in several respects. First, nowhere in the Complaint does plaintiff allege that defendant's wrongful conduct caused a "breach or termination of the relationship or expectancy." The Complaint does not allege that any employee breached a contract with plaintiff, nor does it allege that any unnamed customer refused to do business with plaintiff. At a minimum, plaintiff must allege that someone refused to do business with it in order to sustain its intentional interference claim.

9

Likewise, plaintiff fails to allege anything about the so-called "expectancies" that are the subject of this count. Plaintiff merely alleges that "Defendants were aware that Red Door had relationships with its various customers and employees and were aware of Red Door's expectation that those relationships would continue." Complaint at ¶ 65. There is nothing in that conclusory allegation that there is any "commercially reasonable" basis to have expected that such relationships would continue. There are no facts alleged from which any conclusion could be reached regarding the commercial reasonableness of plaintiff's conclusory "expectations."

Finally, the Complaint nowhere alleges the type of activity that rises to the level of actionable tortious interference. As this Court observed in Bowhead, plaintiff must allege conduct in the nature of "fraud, violence or civil suits." Id. at 174. There are no such allegations in this Complaint. In order to actionable, the alleged interfering activity failing to have done so, Count III must be dismissed.

### C. Plaintiff fails to state a claim for breach of fiduciary duty (Count VI).

Count VI asserts that Mr. Gomez breached a fiduciary duty that he allegedly owed "[i]n his capacity as national makeup artist for Red Door, . . ." Complaint at ¶ 81. The count goes on to claim that the alleged duty "continued after Defendant terminated his employment with Red Door" and that it consisted of an "obligation not to disclose or otherwise misuse confidential business information or Trade secrets obtained during the course of his employment with Red Door." Id. at ¶ 82. This count fails to state a claim.

This Court recently addressed the issue of the employment relationship, and whether that relationship involves a fiduciary duty to preserve confidences after the employment relationship ends. In Tripp v. United States, 257 F.Supp.2d 37 (D.D.C. 2003), the plaintiff alleged that her employer, the federal government, had committed a variety of torts publicly disclosing

10

information it learned about her during her employment after the employment relationship ended. Id. at 38-39. In so doing, the plaintiff argued that the employer-employee relationship was a fiduciary one that included the duty to preserve confidential information. Id. at 46.

In rejecting this claim, this Court explained that the District of Columbia Court of Appeals had never held that the employment relationship is a confidential one, and, citing Kerrigan v. Britches of Georgetown, 705 A.2d 624, 625-27 (D.C. 1997), noted that "D.C.'s highest court flatly rejected the proposition that every contract of employment includes an implied covenant of confidentiality, good faith, and fair dealing." Tripp, 257 F.Supp. 2d at 46. Accordingly, this Court held that it "declines to extend the District's law of confidential relationships to include the employer-employee relationship without some indication that the D.C. Court of Appeals would do the same were it presented with an appropriate situation." Id.

For similar reasons here, there is no reason to create a fiduciary duty of "confidentiality" arising from the employment relationship, much less one that survives the employment relationship as alleged by plaintiff. Based on Tripp, there is no separate cause of action for breach of fiduciary duty to maintain information confidentially.

**D.     Plaintiff cannot state a claim for breach of the implied covenant of good faith and fair dealing (Count VIII).**

In Count VIII of the Complaint, plaintiff Red Door attempts to state a claim for breach of a duty of good faith and fair dealing implied into contracts in the District of Columbia. As demonstrated supra, Section IV(A) however, plaintiff Red Door Salons, Inc. does not have a written agreement with Mr. Gomez. If Mr. Gomez was employed by this plaintiff, it was at most as an at-will employee. Absent an employment agreement between Red Door Salons, Inc. and Mr. Gomez, there is no "agreement," and thus there can be no implied covenant. Accord, Kerrigan v. Britches of Georgetown, 705 A.2d 624, 626-27 (D.C. 1997) ("District of Columbia

does not recognize a claim for breach of an implied covenant of good faith and fair dealing when brought by an at-will employee."); see also Poullard v. SmithKline Beecham Corp., 2005 WL 3244192, at *11 (D.D.C. 2005) (granting summary judgment dismissing implied covenant claim where employee was at-will); Brug v. National Coalition for Homeless, 45 F.Supp. 2d 33, 44 (D.D.C. 1999) (no implied covenant for at-will employee).

**V.    CONCLUSION**

For all of the foregoing reasons, defendant Erwin Gomez respectfully requests that Counts I, III, VI and VIII of the Complaint be dismissed.

                Respectfully submitted,

                TOBIN, O'CONNOR, EWING & RICHARD

By:   /s/David C. Tobin  
       David C. Tobin, Esq., D.C. Bar # 395959  
       Ziad P. Haddad, Esq., D.C. Bar #469470  
       5335 Wisconsin Ave., N.W., Suite 700  
       Washington, DC 20015  
       Tel:  (202) 362-5900  
       Fax:  (202) 362-5901  
       *Attorney for Defendant Erwin Gomez*