UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

Red Door Salons, Inc.
3822 E. University Drive, Suite 5
Phoenix, Arizona 85034

                     Plaintiff,

v.

Erwin Gomez, an individual,
25105 Wista Ridge Road
Laytonsville, MD, 20882

James Packard-Gomez, an individual,
25105 Wista Ridge Road
Laytonsville, MD, 20882

GoPac Industries Inc. d/b/a Erwin Gomez
Salon and Spa, a Maryland Corporation
1519 Wisconsin Avenue NW
Washington, DC 20007

                     Defendants.

**Civil Action No. 1:06CV00286 (GK)**

---

### AMENDED COMPLAINT

---

For its claims against Defendants, Plaintiff Red Door Salons, Inc ("Red Door") alleges as follows:

### THE PARTIES

1.     Plaintiff is an Arizona corporation with its principal place of business in Arizona. Plaintiff is authorized to do business and is doing business in the District of Columbia. Plaintiff's business address in the District of Columbia is 5225 Wisconsin Avenue, N.W., Washington, DC 20015. "Red Door Spas" is a trade name for "Red Door Salons, Inc."

2.      Defendant Erwin Gomez ("Gomez"), an individual, is and was at all material times, a resident of Maryland. Gomez' address is 25105 Wista Ridge Road, Laytonsville, MD, 20882.

3.      Defendant James Packard-Gomez ("Packard"), an individual, is and was at all material times, a resident of Maryland. Packard's address is 25105 Wista Ridge Road, Laytonsville, MD, 20882.

4.      Defendant GoFac Industries Inc. d/b/a Erwin Gomez Salon and Spa ("Erwin Gomez Salon") is a Maryland corporation which is, and was at all times mentioned herein, authorized to do and doing business in the District of Columbia. The Erwin Gomez Salon is located at 1519 Wisconsin Avenue NW, Washington, DC 20007. On information and belief, the principal place of business of Defendant Erwin Gomez Salon is in the District of Columbia.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 in that it is an action between citizens of different states and the matter in controversy, exclusive of interest and costs, exceeds the sum or value of $75,000. Jurisdiction of this Court is also proper pursuant to 28 U.S.C. § 1331, as Plaintiff is alleging a violation of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030. Venue is appropriate in this judicial district under 28 U.S.C. 1391 (a)(1) and (a)(2), because Defendants Gomez, Packard and Erwin Gomez Salon all reside within the District of Columbia and because a substantial part of the events or omissions giving rise to the claims alleged herein occurred in the District of Columbia.

## GENERAL ALLEGATIONS COMMON TO ALL CLAIMS

### Red Door's Business

6.     Red Door is an exclusive Hair Salon and Spa, offering a wide range of services to its customers including hair, skin, nail treatments, massage therapy and make-up application. Red Door also has a product line of shampoo, conditioner and styling products for sale.

7.     Red Door has conducted business in the District of Columbia for nearly 40 years. Currently, Red Door has nine salons and spas in the Washington D.C. metropolitan area. Red Door also operates salons and spas in fourteen other states.

8.     As a customer-service business, Red Door's customer relations and hard-won goodwill are critical to the success of its business. Investing in and cultivating customer relationships and goodwill are especially important to Red Door because it is an exclusive salon and many customers select Red Door because of its reputation. The nature of the unique personal services Red Door provides engenders customer loyalty. As such, customer relationships are among Red Door's most valuable assets, and Red Door has developed those relationships at great effort and expense. Red Door expends significant amounts of money annually to acquire customers through marketing efforts. Because Red Door's business depends in part upon word of mouth and customer referrals, the loss of any customer, whether new or old, represents a significant injury to Red Door's business.

9.     Red Door has made a substantial investment in developing and maintaining confidential, proprietary and trade secret information relating to its business. This information includes, but is not limited to, Red Door's customer lists ("Confidential Information").

10.     During its more than thirty years in business, Red Door has created and maintained its customer lists. These lists are a compilation of its customer names, addresses,

3

telephone numbers and the services and products purchased by the customer over time. This information is stored in Red Door's password-protected computers and is updated every time a customer comes to a Red Door salon. Red Door's customer list is the product of many years of effort and great expense.

11.    Red Door's customer lists derive their value from the fact that the information that is contained in those lists is not generally known to Red Door's competitors, and it cannot be obtained by them through proper means. Red Door has taken reasonable efforts to protect the secrecy of its customer lists. For example, employees must have a computer password to access the lists. In addition, Red Door's employees are required to sign employment agreements, which contain confidentiality and non-competition covenants. As a result of the foregoing, Red Door has a protectible interest in its customer lists.

12.    Red Door also has a protectible interest in its customer relationships. Red Door's customer relationships are one if its most important assets. Red Door operates in a fiercely competitive industry in which the value of customer relationships and goodwill cannot be overstated. Red Door compensates its employees, like Gomez, to play a valuable role in developing and fostering Red Door's customer relationships, and protecting them from misappropriation or other use by Red Door's competitors.

13.    The customer relationship itself is a valuable asset, as well as the referral business that frequently comes from Red Door's customers. Thus, if Red Door were to lose a customer, the referral business would also be lost. This loss of a customer is an irreparable injury because getting a customer and keeping the customer is the product of years of effort and expense. Regardless of whether a customer is new or has been coming to Red Door for years, it is difficult to get the customer back after the customer has left.

4

14.     Misappropriation of Red Door's Confidential Information and trade secrets or interference with its relationships with customers or employees will cause irreparable injury and loss.

**Defendant Erwin Gomez**

15.     Gomez was hired by Red Door in 1994 as a makeup artist in its Chevy Chase salon.  As a condition of his employment with Red Door, Gomez on January 21, 1998 signed a Confidentiality and Non-Competition Agreement (the "Gomez Agreement") with Red Door.  A true and correct copy of the Gomez Agreement is attached hereto as Exhibit A and is incorporated herein by reference.

16.     Under the Gomez Agreement, Defendant Gomez promised that for a period of four months after the termination of his employment, he would not render hair, beauty, nail or other services ordinarily provided by Red Door salon within three miles of Red Door.  Further, Gomez agreed that for a period of six months after termination of his employment, he would not solicit, divert or recruit any Red Door employee to become employed in the hairdressing, beauty services or nail services businesses in competition with Red Door.  Under the Gomez Agreement, Defendant Gomez also agreed to not disclose any of Red Door's confidential information, which included client names, telephone numbers and addresses.  Finally, Gomez agreed that upon his termination, he would immediately deliver to Red Door all confidential information of Red Door, including client lists.

17.     Throughout his employment, one of Gomez' primary responsibilities was to develop and foster Red Door's customer relationships and goodwill.  As such, Gomez had significant contact with Red Door's customers.

18.     In reliance upon Gomez' promises as set forth in the Gomez Agreement, Red Door invested significant time and money in Gomez during his ten-plus years of employment. Red Door would not have made such an investment in Gomez, and would not have introduced him to its customers, had known it Gomez would breach the Agreement.

19.     In June/July 2005, while still employed by Red Door, Gomez approached Red Door's management and announced his plans to open a competing salon in the near future. Red Door continued to employ Gomez in exchange for his express agreement: (a) not to solicit or petition Red Door guests, at any time, relative to his new business venture; (b) for a period of six months following the termination of his employment with Red Door not to solicit or petition anyone employed at any Red Door location; and (c) that the names and contact information of Red Door's customers would remain the sole property and possession of Red Door Spa Holdings, Inc. *See* Letter Agreement dated July 8, 2005, attached hereto as Exhibit B (the "2005 Letter Agreement").

20.     On or about September 8, 2005, Gomez voluntarily resigned his employment with Red Door, with an announced departure date of October 31, 2005. At that time, Gomez informed Red Door's management that he intended to take some time off during his four month non-competition period. In fact, Gomez lied about his intentions. Rather, and directly contrary to what he told Red Door's management, Gomez secretly opened, operated and/or worked at Defendant Erwin Gomez Salon, a direct competitor of Red Door and located down the street from the Red Door.

21.     Upon information and belief, while he was still employed by Red Door, Gomez took steps to create the Erwin Gomez Salon for the purpose of directly competing with Red Door for customers and employees. Gomez also promoted the Erwin Gomez Salon, a salon directly

competitive with Red Door, while he was still a Red Door employee. For example, on October 18, 2005 the Hispanic Heritage Foundation issued a press release announcing the highlights of their 2005 Heritage Awards. The press release states that the Awards are "backed by a prestigious list of corporate sponsors" including Erwin Gomez Spa and Salon." *See* October 18, 2005 PR Wire announcement, attached hereto as Exhibit C. On or about October 20, 2005, Red Door was informed by the Rene Moawad Foundation that Defendant Gomez and the Erwin Gomez Salon were providing makeup and hair styling for their annual charity auction, an event for which Red Door had previously provided those services.

22.     On or about September 19, 2005, Red Door sent Gomez a copy of the Gomez Agreement and a letter reminding him of his obligations under that agreement.

23.     Individually, and as an agent of the Erwin Gomez Salon, Gomez has stolen and used Red Door's Confidential Information in violation of the Gomez Agreement and the 2005 Letter Agreement. Red Door is informed and believes, and on such information and belief alleges, that beginning shortly after he left his employment at Red Door, Defendants Erwin Gomez Salon and/or Gomez contacted Red Door's customers and solicited their business via telephone and direct mailings. These Red Door customers have never provided their contact information to any of the Defendants.

24.     Individually, and as an agent of Erwin Gomez Salon, Gomez has solicited business from Red Door's customers. Numerous Red Door customers have informed Red Door employees and management that they have been contacted by the Erwin Gomez Salon via either telephone or mail soliciting their business.

25.     Individually, and as agent of Erwin Gomez Salon, Gomez has solicited and hired employees of Red Door, with knowledge those employees have employment agreements with

Red Door that contain restrictive covenants.  The former Red Door employees solicited by and currently working for the Erwin Gomez Salon are:  Valerie Carrasquillo (hair stylist), Nia Cooper (nail technician), Mata Keo (guest services representative), Angee Keo (guest services representative), and Tia Rice (hair stylist).

26.    Upon information and belief, Gomez owns and operates Erwin Gomez Salon in violation of the express terms of the Gomez Agreement and the 2005 Letter Agreement.  Upon information and belief, Gomez is not properly licensed to provide services with the District of Columbia.

27.    Gomez's actions described herein were taken during the course and scope of his employment with Erwin Gomez Salon and were taken for the benefit of himself and the Erwin Gomez Salon.

28.    Gomez's actions described herein were done intentionally, maliciously, and for the purpose of causing substantial harm to Red Door.

## Defendant James Packard

29.    Upon information and belief, Packard at all relevant times was aware of Gomez's contractual obligations to Red Door.

30.    Upon information and belief, Packard, as the owner of the Erwin Gomez Salon hired Gomez and other Red Door employees with the intent of interfering with their contractual obligations to Red Door.

31.    Individually and as an agent of the Erwin Gomez Salon, Packard has misappropriated Red Door's Confidential Information without Red Door's consent by soliciting Red Door's customers for the benefit of himself and Erwin Gomez Salon.

32.    Individually and as an agent of the Erwin Gomez Salon, Packard has solicited and is soliciting Red Door's customers for the benefit of himself and the Erwin Gomez Salon. Numerous Red Door customers have informed Red Door employees and management that they have been contacted by the Erwin Gomez Salon via either telephone or a mailing attempting to solicit their business.

33.    Individually and as agent of the Erwin Gomez Salon, Packard has solicited and is soliciting Red Door's employees for the benefit of himself and Erwin Gomez Salon, with knowledge those employees have employment agreements with Red Door that contain restrictive covenants.  The former Red Door employees solicited by and currently working for the Erwin Gomez Salon are:  Valerie Carrasquillo (hair stylist), Nia Cooper (nail technician), Mata Keo (guest services representative), Angee Keo (guest services representative), and Tia Rice (hair stylist).

34.    The above-described actions by Packard were taken for the benefit of himself, Gomez and the Erwin Gomez Salon.

35.    Defendant Packard took all of the actions described herein intentionally, maliciously, and for the purpose of causing substantial harm to Red Door and to put Red Door at a great competitive disadvantage in this market.

**Defendant Erwin Gomez Salon**

36.    The Erwin Gomez Salon is a direct competitor of Red Door, offering many of the same services as Red Door.  The Erwin Gomez Salon is located approximately three miles from Red Door's Chevy Chase salon, which is the same Red Door salon at which Gomez worked.

37.    GoPac Industries Inc. d/b/a Erwin Gomez Salon was incorporated on or about August 15, 2005, when Defendant Gomez was still employed by Red Door.

9

38.    The Erwin Gomez Salon's website contains a profile for Defendant Gomez that states in relevant part, "[o]ver the past 12 years, as the national makeup artist and eyebrow guru for Elizabeth Arden Red Door Salons and Spas . . . ." Gomez is using Red Door's name, reputation and goodwill in direct competition with Red Door in violation of law.

39.    Upon information and belief, the Erwin Gomez Salon had no business presence or facilities in the District of Columbia prior to October of 2005.

40.    Upon information and belief, the Erwin Gomez Salon was aware of Gomez's contractual obligations to Red Door on or before the date he began working at Erwin Gomez Salon.

41.    Upon information and belief, the Erwin Gomez Salon hired Gomez with the intent of interfering with his contractual obligations to Red Door.

42.    Before and during his employment at Erwin Gomez Salon, Gomez took Red Door's Confidential Information and has used it without Red Door's consent by soliciting Red Door's customers for the benefit of himself and the Erwin Gomez Salon and with the full knowledge and consent of Erwin Gomez Salon.

43.    Before and during his employment with the Erwin Gomez Salon, Gomez has solicited and is soliciting Red Door's customers for the benefit of themselves and Erwin Gomez Salon and with the full knowledge and consent of Erwin Gomez Salon. Numerous Red Door customers have informed Red Door employees and management that they have been contacted by the Erwin Gomez Salon via either telephone or a mailing attempting to solicit their business. These customers never provided their contact information to any of the Defendants. For example, one Red Door customer informed Red Door management that she received a telephone call from someone informing the customer that she was from the Erwin Gomez Salon and that

the customer's nail technician (Nia Cooper) was now working at the Erwin Gomez Salon. This customer informed the caller that Nia was not her nail technician. The customer never provided Nia or any of the Defendants with her telephone number or address.

44.     Before and during their employment with Erwin Gomez Salon, Gomez has solicited and is soliciting Red Door's employees for the benefit of themselves and Erwin Gomez Salon, with the full knowledge and consent of Erwin Gomez Salon. The former Red Door employees solicited by and currently working for the Erwin Gomez Salon are:   Valerie Carrasquillo (hair stylist), Nia Cooper (nail technician), Mata Keo (guest services representative), Angee Keo (guest services representative), and Tia Rice (hair stylist).

45.     The above-described actions by Gomez were taken during the course of his employment with, and for the benefit of himself and Erwin Gomez Salon.

46.     Erwin Gomez Salon took all of the actions described herein intentionally, maliciously, and for the purpose of causing substantial harm to Red Door and to put Red Door at a great competitive disadvantage in this market.

## COUNT I

### (Breach of Contract Against Defendant Gomez)

47.     Red Door realleges and incorporates the paragraphs set forth above.

48.     Gomez signed and agreed to be bound to the terms of the Gomez Agreement and the 2005 Letter Agreement  These agreements contain confidentiality and other covenants, which are ancillary to a valid agreement and were supported by continued employment at Red Door and other consideration.

49.     In taking the actions described above, Gomez has breached his contractual obligations with Red Door.

11

50.     As a proximate result of the breach of Gomez's employment agreement, Red Door sustained and will continue to sustain substantial damages.

51.     Unless Gomez is restrained from violating the express terms of his agreement, Red Door will continue to suffer immediate and irreparable harm through loss of its Confidential Information.

52.     Red Door cannot be adequately and fully compensated with the payment of monetary damages and unless Gomez is restrained from continuing to breach his contractual obligations, Red Door will continue to suffer immediate and irreparable harm.  Thus, there is an inadequate remedy at law and Red Door is entitled to injunctive relief.

## COUNT II

### (Misappropriation of Trade Secrets – Against All Defendants)

53.     Red Door realleges and incorporates by reference the paragraphs set forth above.

54.     Defendants have misappropriated Red Door's trade secrets by acquiring them by improper means and using them without Red Door's consent.

55.     Defendants have misappropriated Red Door's trade secrets by disclosing or using them without Red Door's consent.

56.     Defendants have misappropriated Red Door's trade secrets by acquiring, disclosing or using them without Red Door's consent, and knew or had reason to know that the trade secrets were acquired through improper means, and were acquired under circumstances giving rise to a duty to maintain their secrecy or limit their use.

57.     Defendants have acted willfully and maliciously in misappropriating Red Door's trade secrets, to the significant detriment of Red Door, thereby entitling Red Door to exemplary damages.

12

58.    As a proximate result of Defendants' misappropriation of Red Door's trade secrets, Red Door has sustained and will continue to sustain substantial damages.

59.    Defendants have been unjustly enriched by their misappropriation of Red Door's trade secrets.

60.    Unless Defendants are temporarily and permanently restrained from misappropriating Red Door's trade secrets, Red Door will continue to suffer immediate and irreparable harm through loss of its trade secrets.

61.    Red Door's damages cannot be compensated fully and adequately through money damages, and will continue to suffer immediate and irreparable harm.  Thus, there is no adequate remedy at law and Red Door is entitled to injunctive relief.

## COUNT III

**(Intentional Interference with Business Expectancies Against All Defendants)**

62.    Red Door realleges and incorporates by reference the paragraphs set forth above.

63.    Red Door had a valid business relationship with Gomez, its employees, and its customers and an expectancy that those relationships would continue.

64.    At all times mentioned herein, Packard and the Erwin Gomez Salon were aware of Gomez' contractual obligations to Red Door.

65.    At all times mentioned herein, Defendants were aware that Red Door had relationships with its various customers and employees and were aware of Red Door's expectation that those relationships would continue.

66.    Despite Defendants' awareness of these relationships, Defendants wrongfully, intentionally and purposely sought to cause the termination of these above-described relationships.

13

67.     As a proximate result of Defendants' interference with its relationships and expectancies, Red Door has sustained and will continue to sustain substantial damages in an amount to be proven at trial.

68.     The acts by Defendants as described above were willful, malicious and done with an evil intent to undermine Red Door's business.  As such, Red Door is entitled to an aware of exemplary damages against Defendants.

### COUNT IV

**(Conversion Against All Defendants)**

69.     Red Door realleges and incorporates by reference the paragraphs set forth above.

70.     Red Door's Confidential Information is the property of Red Door.

71.     Defendants' conduct, as herein described, constitutes an unauthorized and wrongful assumption of control, dominion and ownership over Red Door's property right to those assets.

72.     Red Door has an absolute and unconditional right to immediate possession of its Confidential Information, under the express terms of Red Door's employment contract with Gomez.

73.     Red Door asserted a demand for its Confidential Information in correspondence to the Defendants.

74.     As a proximate result of these improper acts by Defendants, Red Door has sustained and will continue to sustain substantial damages.

75.     The acts by Defendants as described above were willful, malicious, and done with an evil intent to undermine Red Door's business.  As such, Red Door is entitled to an award of

exemplary damages against Defendants to punish Defendants and to deter similar conduct by others.

## COUNT V

### (Breach of Duty of Loyalty Against Defendant Gomez)

76.     Red Door realleges and incorporates by reference the paragraphs set forth above.

77.     Defendant Gomez was employed by Red Door.  During his employment, he owed Red Door an absolute duty of loyalty.  Gomez' conduct, as hereinbefore described, constitutes a breach of this duty.

78.     As a result of these improper acts by Gomez, Red Door has sustained and will continue to sustain substantial damages.

79.     The acts by Gomez as described above were willful, malicious, and done with an evil intent to undermine Red Door's business.  As such, Red Door is entitled to an award of exemplary damages against Gomez.

## COUNT VI

### (Breach of Fiduciary Duty Against Defendant Gomez)

80.     Red Door realleges and incorporates by reference the paragraphs set forth above.

81.     In his capacity as a national makeup artist for Red Door, Defendant Gomez owed fiduciary duties to Red Door.

82.     Under District of Columbia law, as a fiduciary of Red Door, Defendant Gomez has an obligation not to disclose or otherwise misuse confidential business information or trade secrets obtained during the course of his employment with Red Door.  This obligation continued after Defendant terminated his employment with Red Door.

83.     By taking Red Door's customer list, and using this information for himself and his new salon, Defendant Gomez breached his fiduciary duty.

84.     As a result of Defendant's breach of his fiduciary duty, Red Door has and will continue to suffer damages in an amount to be proven at trial.

85.     The acts of Defendant Gomez as described above were willful, malicious and done with an evil intent to undermine Red Door's business.  As such, Red Door in entitled to an award of exemplary damages against Defendant Gomez to punish him and deter similar conduct.

## COUNT VII

### (Unfair Competition Against All Defendants)

86.     Red Door realleges and incorporates by reference the paragraphs set forth above.

87.     Defendants' have misappropriated Red Door's trade secrets and/or used Red Door's customer information for their personal benefit and to the detriment of Red Door.

88.     Defendants' misappropriations and/or use of Red Door's customer information have provided Defendants' with an unfair competitive advantage over Red Door in the salon business.

89.     As a proximate result of Defendants' unfair competition, Red Door has sustained and will continue to sustain damages.

90.     Unless Defendants are temporarily and permanently restrained from unfairly competing with Red Door, Red Door will continue to suffer immediate and irreparable harm through loss of its confidential, proprietary and trade secret information, reputation and goodwill. Red Door's damages cannot be adequately compensated solely through money damages or other legal remedies, thereby entitling Red Door to equitable relief in the form of an injunction.

16

## COUNT VIII

**(Breach of Implied Covenant of Good Faith and Fair Dealing Against Defendant Gomez)**

91.    Red Door realleges and incorporates by reference the paragraphs set forth above.

92.    The agreement between Red Door and Defendant Gomez contained implied covenants of good faith and fair dealing which imposed upon Gomez a duty to act in good faith and to deal fairly with Red Door at all times, and to refrain from undertaking actions designed to deprive Red Door of the benefits of its respective bargains with him.

93.    Defendant Gomez has engaged in the conduct described above in bad faith.  The conduct of Defendant Gomez constitutes a breach of the implied covenant of good faith and fair dealing.

94.    As a result of this breach, Red Door has sustained and will continue to sustain substantial damages.

95.    The acts of Defendant Gomez as described above were willful, malicious and done with an evil intent to undermine Red Door's business.  As such, Red Door in entitled to an award of exemplary against Defendant Gomez to punish him and deter similar conduct.

## COUNT IX

**(Civil Conspiracy Against All Defendants)**

96.    Red Door realleges and incorporates by reference the paragraphs set forth above.

97.    Based upon the facts set forth above, Defendants had an agreement to participate in an unlawful act, or a lawful act in an unlawful manner.

98.    Such unlawful actions were performed by at least one of the Defendants causing injury to Red Door.

99.    Such unlawful actions were done pursuant to and in furtherance of Defendants common scheme.

100.    As a result of this breach, Red Door has sustained and will continue to sustain substantial damages.

101.    The acts of Defendants as described above were willful, malicious and done with an evil intent to undermine Red Door's business.  As such, Red Door in entitled to an award of exemplary damages against Defendants.

## COUNT X

### (Violation of the Computer Fraud and Abuse Act Against All Defendants)

102.    Red Door realleges and incorporates by reference the paragraphs set forth above.

103.    Defendants knowingly and with an intent to defraud accessed Red Door's computer systems and obtained confidential and proprietary information regarding Red Door's business from those systems.

104.    Defendants did not have authorization to access Red Door's computer systems and obtain this confidential and proprietary and use it to compete unfairly with Red Door.

105.    Defendants disseminated the information they obtained from their unauthorized access of Red Door's computer systems to third parties, and used it to create a business to compete with Red Door.

106.    Defendants' unauthorized access and dissemination of Red Door's confidential and proprietary information for such purposes has caused Red Door to suffer damages and loss, that in the aggregate, exceed five thousand dollars.

107.    Defendants' actions constitute a violation of the CFAA, 18 U.S.C. § 1030.

108.   Accordingly, Red Door is entitled to damages and injunctive relief pursuant to 18 U.S.C. § 1030(g).

## COUNT XI

### (Preliminary and Permanent Injunctions Against All Defendants)

109.   Red Door realleges and incorporates by reference the paragraphs set forth above.

110.   If Gomez is not enjoined from breaching his employment agreements, Red Door will suffer continuing irreparable harm and there is an inadequate remedy at law.

111.   If Gomez, Packard and the Erwin Gomez Salon are not enjoined from misappropriating Red Door's trade secrets and otherwise using its Confidential Business Information, Red Door will suffer continuing irreparable harm and there is an inadequate remedy at law.

112.   Red Door is entitled to the entry of a Temporary Restraining Order, and Preliminary and Permanent injunctions prohibiting Defendants from individually, collectively or through the acts of any agents or representatives from: (a)  breaching Gomez' employment agreement with Red Door; and (b) disclosing, using and otherwise misappropriating Red Door's trade secrets and  Confidential Business Information.

### JURY TRIAL DEMAND

113.   Red Door hereby requests a trial by jury on all of its legal claims.

**WHEREFORE**, Red Door prays for judgment in its favor and against each Defendant as follows:

A.     An Order temporarily and permanently enjoining and restraining Defendants, their agents, employees, affiliates, and all those acting in concert with them or on their behalf or by their direction from:

19

(1)     Disclosing or using any of Red Door's customer lists, or other confidential information.

(2)     Removing, altering, erasing, deleting, and destroying any documents or records in their possession, custody, or control, which were disclosed to, or created by, Gomez during his employment with Red Door and requiring Defendants to return all such documents or records to Red Door;

(3)     Directly or indirectly working in, owning, operating or in any way being affiliated with another hair salon, day spa or hair salon and day spa within a three mile radius of Red Door for four months.

(4)     Directly or indirectly soliciting, diverting or recruiting any employee of Red Door to become employed, directly or indirectly, by any firm, company or person engaged in the hairdressing, beauty services or nail services business.

(5)     Soliciting, either directly or indirectly, or accepting business from any customer of the Red Door for a period of six months.

B.     For compensatory damages, consequential, and/or restitutionary damages in an amount to be proven at trial, including actual loss, royalties, lost profits and the unjust enrichment Defendants gained by the above-described conduct;

C.     For an accounting by Defendants of all monies received as a result of their actions;

D.     For exemplary damages in an amount sufficient to punish Defendants and to deter Defendants and others from such conduct in the future;

E.     For attorneys' fees;

F.     For costs;

G.    For prejudgment interest, calculated at the maximum rate allowed by law;

H.    For interest on the foregoing at the legal rate from the date of judgment until paid

in full; and

I.    For such other and further relief as the Court may deem just and appropriate.

DATED this _____ day of _____, 2006.

SHERMAN & HOWARD, LLC


By _____
Stephanie J. Quincy (Admitted Pro Hac Vice)
Robert G. Vaught (Admitted Pro Hac Vice)
1850 North Central Ave., Suite 500
Phoenix, Arizona  85004
Telephone:  (602) 636-2008
squincy@sah.com

Joel L. Green (192682)
Jennings, Strouss & Salmon, P.L.C.
1700 Pennsylvania Ave., N.W.
Suite 500
Washington, D.C.  20006
Telephone:  (202) 371-9889

Attorneys for Plaintiff Red Door Salons, Inc.

21

## CERTIFICATE OF SERVICE

I hereby certify that on this _____ day of _____, 2006, I electronically transmitted the foregoing to the Clerk's office using the CM/ECF System for filing. Copies of the foregoing have been sent this date using the CM/ECF System to the following:

David C. Tobin, Esq.
Ziad P. Haddad, Esq.
TOBIN, O'CONNOR, EWING & RICHARD
5335 Wisconsin Avenue N.W., Suite 700
Washington, D.C. 20015
Attorneys for Defendants

_____